Good morning, your honors. Jonathan Shapiro on behalf of the plaintiff appellant. Wendy Alberti with me is Nate Baber from my office, who is also on these papers. Appreciate the court's time this morning. The issues in this case for Ms. Alberti are fairly straightforward in the context of her claims for unlawful and wrongful arrest, malicious prosecution, and retaliatory prosecution. The primary issue, your honors, comes down to did the defendants have probable cause to arrest Ms. Alberti and did they have arguable probable cause as well? I think it's important to set the table. In this circuit, assessing whether an officer had probable cause for an arrest, a court must look at the totality of the circumstances. And we submit that in making the determinations in this case, your honor, the district court failed to do so. Again, I think table setting and framing of what happened here is very important. To believe probable cause existed, or even arguable probable cause, when considering the totality of the circuit, you have to believe that Ms. Alberti, a veteran bus driver of over 30 years, decided to lock a complete stranger in the luggage compartment of a bus while preparing to travel nearly two hours on August 4th of 2019, knowing at the time this was happening that it was being captured on video and that she was going to get back on that very bus and ride two hours, where ultimately she would get off that bus and that luggage compartment would be opened. But wasn't the person locked in the luggage compartment saying, this woman intentionally locked me in the luggage compartment and I heard her say, have a nice ride? I mean, she may have been mistaken about what she believed, but that was what she was telling the police officers at the scene. That is what she was telling the police officers, but that's not the end of the inquiry. It's not just about what the alleged victim is asserting. It's still looking at the totality of the circumstances. I mean, you're just saying it's kind of implausible that a bus driver would do this, but people commit crimes that don't make a lot of rational sense all the time, right? So if the evidence suggests that she does it, that she did it, they have probable cause, right? You're not saying the officers were compelled to say, well, pretty much it looks like she did it, but I don't know. It doesn't make sense for a person to do such a thing, so we should not arrest her. No, Your Honor. I'm saying that when you look at the totality of the circumstances, that's exactly what I'm saying, that if you look at the circumstances that were going on at that point in time, that there was not probable cause, that no reasonable officer can conclude that. So they have – so the victim calls from inside the luggage compartment. She says, I'm trapped in the luggage compartment. They in fact stop the bus. They find her in the luggage compartment. The victim says, I was locked in here by the bus driver. She did it intentionally because she said, ha, have a nice ride. The driver confirms that she opened the compartment for the victim. And the other drivers say that Alberti is responsible for luggage compartments and it would be a violation of policy to allow a driver to have – or to allow a customer to have access to the luggage compartments and so on. That's a lot of evidence suggesting that it happened that way, isn't it? Well, in terms of Mr. Gene Bautista's statement about company policy, I don't think that's quite what it said, and it's not quite what he said. What his statement was to the police, and I think it was misconstrued by the district court, was that the policy was to secure the compartments, closing the compartments. That's what his statement said. It had nothing to do with whether the person's crawled in or otherwise or anything else going on in checking us. That's not expected. That's not anticipated at all under these circumstances. The policy that they cited to in the district court and that was cited to – And so if somebody ended up inside, it suggests that the driver would know or would be responsible for that, right? I don't agree, Your Honor. I guess – I mean I thought that you were just focused on the notion that Trooper Gonzalez thought that it looked accidental and that might have dissipated the probable cause, right? That is another issue as well, Your Honor. Oh, but that happens after the arrest. So like you have to say that maybe there isn't even probable cause for the arrest on the rest of – based on the rest of the evidence. But you're saying that if the victim is found in the compartment, she gives a statement that the driver put her there and mocked her as she went in and you have corroboration from the driver that she did in fact open the compartment for the victim and that it would be a violation of policy to do that kind of thing. You're saying that still wouldn't allow you to make the inference that it's like possible that the driver did that intentionally. No, Your Honor. I don't think it does when you look at the totality of the circumstances. And if I just may briefly – But what's the circumstance that points in the other direction? Circumstances, again, Your Honor – Just that it's kind of implausible that somebody would do that. It is implausible that someone would do that, Your Honor, number one. Number two, again, we have a veteran driver of 30 years. This was information available on the scene who had no criminal record, no wrongdoing on her record. They had that available at the scene of the incident on that date in August of 2019. That is part of the totality of the circumstances as well. It's implausible that she would have done that intentionally for reckless endangerment. You don't need intent. But the reckless endangerment engages in conduct that creates a risk of physical injury to another person. So what action are we talking about here? We're talking about closing a latch to a luggage compartment. We're not talking about putting a gun, leaving it out on a counter for a kid to grab. We're not talking about driving 100 miles per hour down Broadway here in New York City. We're talking about the actual action of closing a luggage compartment. If someone's locked in a luggage compartment with heavy things like luggage shifting around as the bus moves, it's not, I think it's fairly likely that somebody could be injured by that. Well, again, we disagree with that assessment. Well, I mean, certainly a cop can make that assumption, right? I'm sorry, Your Honor? Why can't a policeman make that assumption? I think the police still have to look again at the totality of the circumstances. And I'm sorry I keep lying on that issue. But when you look at the totality of all the evidence there, and I think the timing of everything that took place there, and I'll get to Trooper Gonzales' assessment in a moment. But when you look at what was going on, she got off the bus within four minutes of the stop. They made a determination. They seemed to make a determination they wanted to arrest her based on a statement. They didn't arrest her at that point. They decided to pursue and investigate further, which included calling in immediately, within seconds of determining and making the statement that they wanted to arrest her, without hearing any other evidence other than the statement of the alleged victim here. They made that determination. They called in, and it was more than an hour later before any arrest was actually made of Ms. Alberton. Now in the interim, and this is where Trooper Gonzales comes into play, we do believe there's an issue of fact as to when exactly they learned about that video. And even the district court in its ruling determined that any reasonable officer, knowing of the existence of that video, now this is in the context of the malicious prosecution claim, knowing the existence of that video, a reasonable officer would have looked at that video. That was part of the determination. So if you take that, and again, we contend that there is substantial evidence that Sergeant Sampson knew of the video while at the scene before the arrest. Because there is evidence. And it's- The suggestion that unlawful restraint be added to the list of grounds was made by Officer Detour when he was not aware that Gonzales had viewed the video. He may be aware there was a video. I mean, the video was taking place. Everything was videoed at that bus stop. So probably he was aware of that, but he didn't know that it had been reviewed by Gonzales, let alone that Gonzales thought it was probably accidental. I'm sorry, I missed that last part, Your Honor. Let alone that Gonzales thought it was probably accidental. But even if Gonzales did, would that be attributable to a video? I think the question becomes then is whether it's a reasonable inquiry to look at that video yourself. And even Judge Hall at the district court said- Is the argument that knowing that there was this other trooper who thought it looked accidental that dissipated probable cause? Or the argument is knowing that there was a video out there, it was impossible to establish probable cause until you viewed the video? Because there's some kind of a duty or something to do that. I think it's both. Because when you have that knowledge of that video, and it's available, and there's no evidence that it was not available. It wasn't immediately available. It wasn't at the scene. It was not at the scene. But an officer has a duty to conduct a reasonable investigation. They knew about it again. It's not like the determination was made here to arrest Ms. Alburby the second she got off the bus. They waited a full hour. There's no doubt that communication came in- I understand that you're disputing that there was enough probable cause to make an arrest. But just hypothetically, let's say there was enough probable cause to make an arrest, and yet they also know there's a video out there. Let's say they have reason to think that the defendant is going to disappear and they won't be able to locate her again. Could they make an arrest then if they don't have time to view the video? If they don't have time to view the video, I could see an argument for that, Your Honor. Right, so then why does that mean that it therefore prevents finding a probable cause based on the availability of the time? Isn't the inquiry just whether there was enough evidence to establish probable cause to make an arrest at the time, regardless of whether there's evidence out there? I think it goes back to looking at what happened, even the district court's finding with respect to the Melissa's prosecution claim. Because even at that level, the district court said that knowing the existence of that video, it was not reasonable and there was not probable cause to pursue the charges at that point in time without looking at the video. Again, in the timing, when you look at the timing of what transpired, when she got off the bus, four minutes in, they said they thought there was a charge. They hadn't done any investigation. Are you talking about whether it's reasonable or reasonable behavior on the part of the officers? But isn't our inquiry whether there was enough evidence before the officers for them to have a reasonable belief that a crime had been committed? So we're not micromanaging the course of their investigation. The question is whether they had probable cause to make an arrest. That doesn't depend on whether they conducted the investigation in exactly the way we would have conducted the investigation. So shouldn't we be looking at the quantum of evidence before the officers? I don't see where we get this warrant to talk about how the officers should conduct an investigation. I mean, they have every incentive to compile enough evidence to justify the arrest, obviously, but I don't see why it's the question before us is whether they acted reasonably in doing that. Well, the question is whether the hypothetical officer and the reasonable officer in that circumstance is what they would have done. And again, the district court— No, it's whether they had a reasonable belief that a crime had been committed, right? Not what they would have done. And again, you have to look at the totality of the circumstances, the evidence on hand. And my point on the video, again, was at the scene itself. And I am going to rely, again, on the district court's own finding, was that knowing that video existed in context of a malicious prosecution claim, there is not probable cause. Now, going back to the scene of the— Well, I'm not sure the district court is right, so why would that be? So just knowing there is a video out there, if the evidence otherwise makes it reasonable to believe that a crime had been committed, why does knowing that you could gather more evidence in the future mean that you lack probable cause at that time to make an arrest or to bring charges? It's not just knowing about the video. It's knowing what's been reported about that video and the ability to see that video. Yeah, so all they know about what's been reported about that video is that the new guy says it looks accidental, right? And so I'm not sure what that means. I mean, maybe he's reporting that it looks like, you know, the door accidentally closed, right? And she didn't intend to close the door. Maybe that looks accidental, right? But it could still be reckless not to open it back up and let the person out. So the fact that a third party said something looks accidental, I'm not sure what that means. Is that, like, explanatory, that somebody thinks that it looks like there was an accident involved? Whether it's a new officer or an experienced officer, this is an officer trained by the state of Connecticut. They all receive the same training. Maybe their levels of experience are different, but they all receive the same training. And officers are allowed to rely on each other when the— Well, they're allowed to, I understand. But the question before us is whether Trooper Gonzalez's opinion that something looks accidental is plainly exculpatory such that it would dissipate probable cause that otherwise existed, right? Well, in that case, Your Honor, I've looked at the video. I'm sure you all have looked at the video. The prosecutor looked at the video. Even the district court judge, Judge Hall, looked at the video. And even she found that it was compelling evidence that there was not a crime committed. I mean, I look at the video. It's pretty remarkable that she seems to forget within a matter of seconds that the passenger was there reaching into the compartment, right? I don't think it's remarkable at all. I think she looked. The woman told her ahead of time. It's right in the front. Whether things may jostle or not doesn't matter. She was told right away that the item she needed to get was right in the front. She turned her head. She was hugging a colleague, laughing, obviously having a joyful conversation. She looked around. A joyful conversation. It's just a couple seconds. It was a couple seconds, yes. Right. But she looked around. You would say, actually, well, she just wasn't paying attention and sort of let the person go in. I mean, I don't know. Maybe that is reckless. It's not obvious to me. What about the video shows it's obvious, if you otherwise thought that she did it intentionally or recklessly, that it's obviously not? Again, I think then we get into what's reckless, Your Honor, and what's reckless conduct. Again, this is not the situation with the gun left on the counter driving 100 miles per hour or getting out of a taxi cab and being a taxi cab driver. Your passenger drops something. The passenger goes to pick it up. You take off because you have no idea what's going on, and you run over the passenger. Is the taxi cab driver supposed to get out of the car, look underneath every time a passenger gets out, just in case we're creating an obligation in a requirement that's not consistent with the bus policy? Well, maybe the taxi cab driver should wait seven seconds when somebody's getting out of the car before speeding away. I mean, this is a seven-second period, right? Yes, Your Honor, it is. So I'm not sure whether it would be reckless or not if somebody's getting out of a cab, and within a couple seconds the taxi driver just speeds away. And again, Your Honor, we would submit that when you look at what Ms. Alberti did that day and what she was required to do, and again, because I think when you look at the determination, even in the district court finding and the decisions by the arresting officers at the time, it wasn't just about the statement of the victim. They did look at, for example, the statement by the other bus driver, Mr. Gene Batista, and when you look at it, they misconstrued exactly what the policy was. Again, the policy had nothing to do with checking the compartments. And by the way, Ms. Alberti at that point in time was not working. She was off duty at that point in time, riding the bus to Boston. Her job was to close the compartment. That's what the policy was. She didn't violate any policy at all at that point. Wasn't there a policy that she wasn't supposed to let passengers climb into the luggage compartment to begin with? There, I believe, was a policy about, and I'm not going to say climbing in, but getting items during a break. So I would agree with that, Your Honor. So maybe this is no good deed goes unpunished on the part of Ms. Alberti. Or maybe no reckless deed goes unpunished since the charges were ultimately dropped. But she did let the passenger in, and within seconds, it depends on how you interpret the video, I suppose, but she slams the door on the passenger, and the passenger is there saying, this is intentional. I mean, I would have thought that your best argument was that there was what the district court found, that this somehow dissipated probable cause for the intentional crime. But you're focusing on both, which is your prerogative. I only have so much time, Your Honor. So we'll hear from your adversary. Thank you. Good morning, Your Honors. May it please the court. I'm Assistant Attorney General Janelle Medeiros, and I represent the defendants Robert Hunter, Stephen Sampson, and Daniel Deptula in this matter. This court should affirm the decision of the district court for three reasons. First and foremost, as this court has already recognized, probable cause is a fluid and contextual standard. It's a relatively low bar that was easily met here when a complainant was locked in the luggage compartment of a boss in August that was traveling on the highway and immediately, repeatedly, and adamantly identified the plaintiff as the person who had purposely locked her under there. Second, because no intervening facts or plainly exculpatory evidence came to light to completely dissipate that probable cause, the malicious and retaliatory prosecution claims also fail. And finally, even if this court disagrees with the defendant's argument that there was actual probable cause and no evidence dissipated that probable cause, the defendants at least had arguable probable cause to both arrest and prosecute as the district court. If they are faced with this outlandish story that the driver locked the passenger into the luggage compartment and they hear from another trooper that, well, the video makes it look accidental, why is it reasonable to think that it was not accidental based only on a very frightened person who had been in the luggage compartment? Well, I think, Your Honor, there's a couple of reasons. I don't think it's just solely based on the victim's statement. As Your Honor noted, the victim's statement was obviously corroborated when she was actually under the bus. There's nothing about her statement that's inherently unreliable. She's not under the influence of any drugs. There's no information that would show that she's not credible for any other reason. Well, she's agitated. She says, I'm not OK right now. This is the scariest thing that's ever happened to me in my life and all of that, right? Sure, Your Honor. If that were enough to render a victim's statement inherently unreliable, that would be the case. Why does it make a difference that we know that there's a video and that the only officer who has viewed the video has concluded that it looks like an accident? Well, Your Honor, I think what this court's cases do is they look at all of the evidence at the time of arrest and then determine if that video came out or if that opinion was known. Is that opinion at that time enough to vitiate or dissipate probable cause, as Your Honor stated? It's not about should they have gone to look at the video or what their duty was to go do so. It's about whether that video was enough to completely cancel out what the victim stated, the fact that she was locked under the bus, the fact that she repeatedly and adamantly, she didn't equivocally say, you know, I'm not sure if it was her. I think it was her. She said, no, it was Miss Alberti. She purposely locked me under there. Even in the face of I understand that they didn't view the video before the arrest or the charges, but let's say they had. Do you think if they had seen the video, it would have been plainly exculpatory such to vitiate probable cause? Absolutely not, Your Honor, for a couple of reasons. First, the video itself doesn't have sound, so it doesn't call into question anything that the victim said. Frankly, it kind of corroborates it. It shows that Miss Alberti was the person who shut the door. But I think that this court, when it's looked at what plainly exculpatory evidence is, it's used phrases like evidence that demonstrates that charges are groundless or that a person cannot, as a matter of law, be guilty of a crime or eliminates culpability. A video showing, you know, if Trooper Gonzalez had called and said, hey, it turns out it was Mr. Gene Baptiste. It was the mail bus driver who shut the bus door. That would probably be plainly exculpatory evidence. Oh, really? So if Trooper Gonzalez had said it was not her that closed the door, then there would be no probable cause, right? It would be plainly exculpatory evidence. Okay, but if Trooper Gonzalez calls and it looks like she did it by accident, why is it not the same thing? I mean, whether it's a different driver or it's that she lacks the mens rea to have committed the offense, why are those two different things? So first of all, I think this court has noted that there's a much more flexible standard when it comes to mens rea crimes, when it comes to probable cause, so that's one important fact there. But setting that aside, also, as Judge Jacobs noted, reckless endangerment does not require intentional conduct. Neither does breach of peace. I know my friend says in his brief that it does. So you're saying when Trooper Gonzalez says it looks accidental, you're saying the officers could have thought maybe he's using the term accidental colloquially and it doesn't preclude recklessness. Correct. And as your... But I don't know. He's a trained officer, right? Isn't the reasonable understanding that he's reporting that it looks accidental and, therefore, she didn't do it culpably? Well, I think as Your Honor stated, one question, my friend, is we don't know what accidental means. Like Your Honor said, could it be, you know, it was accidental, walked away, the door shut on its own? Could it be accidental, the young woman did it herself? We don't know what that means. It's also not a statement... So if instead of saying it looks accidental, Trooper Gonzalez had said it looks like the whole thing was an accident and she didn't mean to put her in the compartment, would that be plainly exculpatory? It would be a closer question. I still don't think it would be plainly exculpatory because looking at what this court, or even if it were, at the very least, the defense would still be entitled to argue a probable cause. Looking at, for example, the Stark case or the Triolo case, in both of those cases, the evidence that was available, the facts that were available to officers were obviously more plainly exculpatory than here. In Triolo, there was a statement from another officer that said no offense had been committed. And even in light of that statement, in a report from another officer, the defendant there had at least argued a probable cause to arrest, even after the victim's wife in that case presented, directly presented, photographs that she claimed exculpated her husband. So we have that. In Stark, we have a criminal defense attorney who shows up at a precinct before arrest with a video and says, you need to watch this video, it would exculpate my client. And the officer says, no, I'm not going to watch it, and arrests the guy anyway. And this court held that the defendant there had at least argued a probable cause at that point. So looking at those- So why is that? I mean, what's the principle that's at play there? I mean, you're giving examples where you're emphasizing how exculpatory the evidence was. I mean, if that was in front of the officers, what is the principle that allows them to still claim that they have probable cause, despite having that evidence in front of them? Sure, I think it's exactly what opposing counsel said, which is totality of the circumstances. Even weighing those pieces of potentially exculpatory evidence against all of the other evidence that's out there, it's still not enough to dissipate probable cause. And the same principle applies with even greater force here. The district court here was correct in- But why is it still not enough? When it comes to the statement from Officer Gonzalez, again, as Your Honor said during my friend's argument, that statement, one, it's equivocal. It's not a clear statement that no crime was committed, which is what is required for exculpatory evidence. Again, the language is groundless. A person cannot, as a matter of law, be guilty of a crime. Saying that something's an accident, there's plenty of accidents that still amount to crimes. Reckless endangerment, leaving a child in the backseat of a vehicle, they may not know that that happened. It still could be reckless endangerment. Okay, so the nature of the statement matters. So instead of saying it looks accidental, he had said it's obviously accidental and not culpable. Maybe that would be different, you're saying?  And then even if he had said it clearly was accidental and doesn't amount to a crime or something to that effect, were the officers, did it matter that he was the rookie and maybe they discounted his opinion? Were they allowed to do that? Of course, Your Honor. I think this court has also held that the officers are entitled to weigh the credibility of where the information is coming from. So a statement from a victim who's locked under a bus and heard something is probably going to be a little bit more reliable than a third-party officer who makes an unequivocal statement. Wait, really? I mean, the victim who just went through this traumatic experience is more reliable than the officer who's watched a video of the interaction? It can be in certain circumstances in this one, yes. There's nothing inherently unreliable about the victim's statement here. Her emotional nature not being withstanding of anything, that corroborates her statement. Because when she first exits the bus, she calmly says, thank you so much, thank you for helping me. The moment she sees the plaintiff, she becomes much more emotional and says, that's her, she did it, I know she locked me under the bus. And she recites facts that support her conclusion, basically, about the intentionality of it, that she laughed and said, have a nice ride or enjoy the ride, something like that, before she shut the door. And you said earlier that even viewing the video wouldn't dissipate probable cause. So how is the actual video consistent with still intentionally or recklessly locking the victim into the compartment? So when it comes to recklessness, as Your Honor noted, just the fact that she had opened the compartment and within seconds the young woman climbs in and she doesn't see it, I mean, it's August, it's extremely hot that day. Knowing that someone, or even being aware that someone could have possibly climbed under that luggage compartment, that's obviously creating a risk of recklessness. So, I mean, I had assumed that the recklessness would be the recklessness of locking somebody into the compartment. But you're saying maybe it's just reckless not to check where the passenger ended up before she closed the compartment? Would that be sufficient to support the charges? Absolutely, Your Honor. And part of what opposing counsel stated about Mr. Jean-Baptiste's statement, his statement's in the record at A143, and he does say that Ms. Alberti had told him that she checked all the underside compartments before leaving, and also that it is Peter Pan policy that we do not let passengers into the bays beforehand. So those statements, they also knew that before arrest. So just letting her under there and not checking in the first place, that is absolutely enough to amount to recklessness, just as the district court found. And even if it's not enough to amount to actual probable cause at the very least the district court was correct in finding that arguable probable cause existed to both arrest and prosecute. Could you just address what the record shows about whether the troopers knew about Gonzales' conclusions prior to the arrest? Absolutely, Your Honor. It's undisputed that they did not know before she was arrested. A plaintiff's counsel argued that there's some distinction or disparity between Sergeant Sampson's affidavit and his deposition, but that's just inaccurate. Sergeant Sampson's affidavit is at page 8-121, and he states clearly in his affidavit that he did not receive a communication from dispatch about Gonzales' statement until after Ms. Alberti was arrested. There's no other evidence to contradict that. He does say he learned about it when he was at the scene, right? But the idea is the other officers had already left the scene, too. Exactly, Your Honor. Yes, so there's no dispute about where he was. He was on scene when he got the call, but Ms. Alberti had already been arrested. The key fact is not whether he was on scene or not, it's when was she arrested, and that's undisputedly before they received the communication. I see my time is up, so unless the court has any further questions, we would just ask the court to affirm the decision of the district court. Thank you. If I may, I'm going to start right where counsel left off in terms of the timing and what was going on at the scene and whether there's an issue of fact of what was known at the scene about the video. And it is our contention that Sergeant Sampson knew about the video while at the scene prior to the arrest. And at a minimum, there's an issue of material fact about what he knew about that video and when. His statement in his affidavit is, in our view, contradictory to what he said in his deposition. In his deposition, he clearly said he learned about it at the scene. When you look at the timeline of the dash cam and all the various evidence, just very briefly, within minutes again of getting off the bus, they called it in. Again, it was an hour later before Ms. Alberti was charged with any crime formally. In the interim, what we do know from the dash cam is Sergeant Sampson admitted he'd received a call from dispatch while he was at the scene and that he learned about Trooper Gonzalez's review of the video at that time. What we also know is during a point in time, during the stop about 30 minutes after, so before the charges were brought against Ms. Alberti and arrested at the scene, you could see Sergeant Sampson was on the phone. He was on the phone. Now, we've talked a little bit about the silence of the video at the Peter Pan bus depot. Well, conveniently, Trooper Hunter's mic was off at that point in time. It's our contention that that's the point in time when the call was made. And if you're reviewing the facts in the light most favorable to Ms. Alberti. I think we have that argument in the briefs. I'm just curious, what about this point about it might still be reckless to have opened the compartment for the passenger and within seconds to close it without checking to see where the passenger had ended up and whether the passenger was inside, and that was the recklessness, and the video actually shows that she didn't check for the passenger. So why wouldn't that mean that even under your theory the video would otherwise dissipate the probable cause based on recklessness of knowing she was in the compartment? It would corroborate this theory of recklessness. I think the primary issue with that, Your Honor, is the claim that she knew she was in the compartment. She didn't know she was going to climb in. Is that reasonable to expect that a passenger is going to climb in all the way in to a large compartment while she's right next to her and say absolutely nothing, because what she was told is my bag is right in front. So you're saying that there wouldn't have been knowledge of the risk that the passenger had climbed in, and a reasonable person would assume the passenger did not climb in, and that's why it wouldn't be recklessness even not to check to see where the passenger ended up. Correct, Your Honor. It's just a crazy thing for a passenger to climb into the compartment. It is, and Ms. Alberti even said that in her years she's never seen that happen. Now maybe, Your Honor, if it's a 5-year-old child that's running around, then maybe you think, God, I'd better check, but this is a woman. This is a grown adult. So is it reasonable to think that when an adult tells you, I need to get something out of my bag, you're nice enough to open up the lid to let her do that. She says her bag is up front. Is it reasonable to think that, boy, I'd better check to make sure she didn't crawl all the way in there where she's completely out of my view? I don't think that's reasonable, Your Honor, for anyone to have to take on that. I don't even know if she was all the way in there out of her view. I mean, the video shows she climbs in, the driver gets distracted, and the driver closes the thing and walks away like she might have been close to the end. I mean, it's not obvious from the video how far into the compartment she was. I think it's pretty obvious, Your Honor. It probably takes at least more than a couple seconds to climb over all the luggage to get deep into the compartment, wouldn't it? Perhaps the answer is that the woman in the compartment claimed that it was done deliberately, that there was a laugh, which we can see there was a laugh, plus have a nice ride, although that probably was said by the other driver, and that's what she reported to the police. And it could be that people with a warped sense of humor would find it funny to lock somebody in the compartment. And if it was done that way, it would be reckless endangerment. She was having a joke, and she endangered somebody. And to some extent, Your Honor, it's a he said or she said, she said in this situation. Yes, but the police are always relying on he said and she said. You think when they arrest people, they confess? But that's why you look at the totality of the circumstances, and you've got to put it all together. And it seems, and again, knowledge of the video, the 30-plus year clean history of Ms. Alberti. They made a decision before they did any investigation that they wanted to arrest her. They then did an investigation, and they ignored everything from that investigation, Your Honor. We don't think that was reasonable at all. Thank you very much. Thank you both, and we will take the matter under advisement.